**Aldo DEL NOCE, Plaintiff,**

v.

**DELYAR CORPORATION, Jomarco, Inc., Karoja Corporation, Norma Hess, Frederic H. Brandi, John P. Hammond, A. T. Jacobson, R. Keith Kane, Grant Keehn, Dean Mathey, E. H. McCullough, William B. Moses, Robert J. Stanton, Amerada Hess Corporation, Leon Hess, Individually and as trustee, and Hess Foundation, Inc., Defendants.**

No. 72 Civ. 1819.

United States District Court,
S. D. New York.

Feb. 28, 1978.

Shea, Gould, Climenko, Kramer & Casey, New York City by Milton S. Gould, and Peter C. Alkalay, Irving Steinman, New York City by Lawrence Sucharow, for plaintiff.

Cadwalader Wickersham & Taft, New York City by Jacquelin A. Swords, New York City, for defendant Frederic Brandi.

Milbank Tweed, Hadley & McCloy by Adlai S. Hardin and Sharon W. Lindsay, New York City, for defendant Jomarco, Inc.

## MEMORANDUM DECISION

BRIEANT, District Judge.

By an Order to Show Cause dated September 20, 1977, all parties in interest were directed to show cause before me on December 5, 1977 why a proposed Stipulation of Settlement dated September 8, 1977 should not be approved as fair, adequate and reasonable, and why judgment should not be entered thereby concluding this litigation. Proof of due service of that Order has been filed.

A hearing was held before me on December 5, 1977, the return date of the Order.

On July 30, 1976, after a non-jury trial, this Court filed extensive Findings and Conclusions in this class action. The action was brought by plaintiff in behalf of himself and all other shareholders of Amerada Petroleum Corporation ("Amerada"), claiming *inter alia*, that the merger on June 20, 1969 of Hess Oil & Chemical Corporation ("Hess Oil") into Amerada to form Amerada Hess Corporation ("Amerada Hess") was accomplished by means of a proxy statement which contained material misrepresentations, and omitted to state material facts in violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and Rule 14a(9), 17 C.F.R. § 240.-14a–9, promulgated thereunder by the Securities and Exchange Commission ("SEC"). Other claims were also made in the case, and familiarity with the Findings and Conclusions of July 30, 1976 is assumed.

The Court found a misleading omission in the proxy statement and that the statement was false, and in violation of Rule 14a–9. The Court found that the misleading omission was material, and negligently made.

All of the other numerous claims of plaintiff were rejected at the trial for failure of proof.

The Court found that damage had been caused as a result of the material omission, and found liability on the part of the sur-

viving corporation, Amerada Hess, which exists today as a result of the merger effected by the proxy statement. The Court also held that the individual defendants, Alfred Jacobson, Frederick Brandi and William Moses were liable for the violation. The Court found that the so-called "Hess defendants," a group consisting of Leon Hess, individually and as Trustee, Norma Hess, Delyar Corporation, Jomarco, Inc., Karoja Corporation and Hess Foundation, Inc., which together owned or controlled a total of 57.15% of the voting power of Hess Oil, were dealing at arms length with Amerada and its·shareholders, and were not liable for any wrongdoing in the context of this case. Certain other defendants were not served with process in the action, and the complaint was ordered dismissed as to them.

The Court concluded as a result of the trial that it was inappropriate to attempt to set aside the merger, and that it would be inequitable under all of the circumstances of the case to do so. The Court held that "monetary relief might be afforded to the shareholders [of Amerada] only if the merger resulted in a reduction of the earnings or earnings potential of their holdings." In short, damages should be recoverable only to the extent they can be shown.

In this case there was no misrepresentation as to the nature or value of the securities Amerada shareholders were to receive in the merger, and no direct injury such as · an immediate reduction of earnings, or diminution in the earnings potential of the merged or resulting corporation. In terms of *Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281, 1304 (2d Cir. 1973), the Court was required "to achieve fair compensation for injured plaintiffs without being too Draconian on defendants." This Court held in its Findings and Conclusions, p. 65, that:

> "The damages suffered by the plaintiff class would be the so-called out-of-pocket measure of damages, *i. e.,* 'the difference in value between the package of securities received as a result of the amalgamation and the actual value of the stockholders interest in the assets of [the merged corporation].'

> "Actual value of stockholders 'interest in the assets' must be interpreted as 'going concern' value and not liquidation value. Going concern, or 'fair value' of a shareholders' bundle of rights is not necessarily measured by market price at a given time or average over a period of time." (Citations omitted.)

At the trial, plaintiff had attempted to compute the value of Amerada's physical assets, that is, its oil and gas reserves, and then after adding a 15% premium to represent going concern value, compared this figure with the market value of the preferred stock of Amerada Hess received in the merger by the members of the class. This Court held that such a comparison has no validity, because asset value by itself is not an adequate measure of the actual value of a business as a going concern, and comparing the two figures is meaningless. Comparative book value before and after the merger was likewise regarded as not probative of the damage in this case.

In short, there was insufficient evidence in the trial record to permit fixing damages. However, this Court was satisfied that there were damages. The Court held that in fairness to the parties, because it was not possible to determine the amount of damages without relying on impermissible speculation and hindsight, the interests of justice required that the trial record be opened to allow the necessary evidence to be supplied.

While the case was in that posture, lengthy and detailed arms-length bargaining proceeded with a view toward settlement. As a result of this bargaining, experienced counsel for the parties achieved the proposed settlement agreement which is now before the Court for approval.

Counsel in this case have agreed, and the Court finds, that a further trial to determine the damages recoverable by the class would involve difficult and close questions of law and fact. Indeed, such damages might turn out, both as a matter of fact and in law, to be minimal. There are serious problems attendant to the proof of

damages. A final judgment in favor of the class, fixing damages after a further trial would then be subject to appellate review, both as to liability, as initially found in the July 30, 1976 Findings and Conclusions, and also on the issue of damages. Furthermore, the plaintiff class was asserting numerous other claims which the Court had rejected in the initial trial when it disposed of the issue of liability, and these points also could be reviewed on appeal following a final judgment. All this would require a great deal of time and expense and injects into the situation large elements of uncertainty.

The proposed settlement, which also includes certain peripheral claims which were alleged in other actions affecting either the class or the corporations, discussion of which has little significance, requires that Amerada Hess shall pay a settlement fund of up to Four Million Dollars ($4,000,000.00), and that all shareholders of Amerada at the close of business on June 20, 1969, except Hess Oil and the defendants, and excepting also those who have filed requests for exclusion from the class, shall be entitled, on filing of a valid proof of claim, to receive 38½ cents, multiplied by the number of shares of Amerada stock which each such claimant held on the date of merger, reduced by that class member's proportionate share of any expenses which the Court awards out of the fund for legal services and expenses of this litigation, all as provided in Paragraphs 8 and 9 of the Stipulation.

Detailed procedures are provided for processing the claims and adjudicating any objections to claims which may be asserted either by the class representative or counsel to Amerada Hess. Following completion of the litigation and disbursement of so much of the fund required to be paid out in fees and expenses, valid and allowed claims are to be paid. The remaining balance, if any, of the $4,000,000.00 settlement fund is to be returned to Amerada Hess.

As noted, the proposed Settlement was negotiated at arms-length with the assistance of the Court and of a Magistrate, by experienced counsel having full regard to factual and legal difficulties faced by members of the class. Under established principles, this Court is not required to substitute its business judgment for that of plaintiff and his counsel, but need only consider whether the proposed Settlement is fair and reasonable. In this consideration the probabilities of ultimate recovery and the likely amount which may be recovered must be considered. The law favors compromise of disputed claims, where, as here, such compromises are just and reasonable and free from any collusion or improper conduct. *City of Detroit v. Grinnell Corporation,* 495 F.2d 448 (2d Cir. 1974).

The objections raised to the Settlement are not persuasive. Objections were filed by Ms. Esther Barringer, who owned 100 shares of the common stock of Amerada. She claims that the shareholders' meeting of Amerada on May 15, 1969 was irregularly conducted, and that the vote was not as recorded and stated by the Chair. She also asserted that it was a raucous meeting, and that defendant Brandi uttered a statement which, if said, is aptly characterized by Ms. Barringer as an "obfuscation."

These issues raised by Ms. Barringer might have been valid, but they were not comprised within this lawsuit, and were not adjudicated at the trial. The only part of this lawsuit which remains open, and would proceed to adjudication in due course but for the proposed Settlement is the determination of the amount of provable damages, if any, which may be recovered by the class members assuming that the Court's view of liability is sustained on appeal. This figure could be minimal, or it could be substantial. On the trial record there was not adequate evidence for the Court to find the truth as to damages, which lies somewhere between the contention of the defendants that there is none, and the assertions of the plaintiff's experts, which the Court regards as being entitled to no weight, except that their proof clearly shows there was some damage. As to any and all of the aforementioned issues which are not within the scope of this lawsuit, it is too late in time to raise them today. ·

Continuing her objections, Ms. Barringer refers to a claimed breach of fiduciary duty on the part of Amerada directors. This Court has already declined to find any such breach. It is not a breach of fiduciary duty to act in a fashion which tested by hindsight now appears improvident. The balance of Ms. Barringer's written presentation, docketed November 28, 1977, as amplified by her oral statement at the hearing, adds nothing, and shows no reason why the Court should not approve the proposed Settlement agreement.

Mr. John Weisner also appeared *pro se* in opposition to the settlement. It is not exactly clear from the record whether, prior to the merger, Mr. Weisner was a shareholder of Hess Oil or Amerada, but the Court will treat him as having been a shareholder of Amerada. Were it otherwise, he would lack standing in this proceeding. He attended the meeting. He stated:

"I was sitting next to her [Ms. Barringer] as an observer, not being a stockholder, and I want to describe to your Honor clearly and fairly what occurred.

There was a motion on the floor to postpone the meeting for a minimum of two weeks. Suddenly, a big up roar and there was pandemonium, that's all I can tell you. People were screaming at everyone, and all of a sudden they said it was passed, the merger is completed, which is absolutely irregular because there was a motion on the floor which should be handled first preceding whatever happened before the other motion so, therefore, I say to you in all fairness that what occurred on that date was the most irregular, flagerant violation of law.

Now, I'm not a lawyer, either, but I have a little common sense so I address you and you will understand what happened. Now, I was sitting right next to Ms. Barringer. I bought stock afterwards to attend the meeting. The same thing happened. When somebody wanted to get up, right away the steam roller started going and somebody made an objection and so forth and so on and nothing happened.

Ms. Barringer got up and somebody in back of her started saying, 'Sit down, sit down.'

She had a perfect right to speak, just like I'm addressing your Honor now.

To conclude, I would like to say that there should have been a jury trial. Let the people decide what kind of case that is." (Tr. pp. 14–15.)

Here again this objectant is raising points not within the scope of the issues tried in this case. Insofar as the meeting itself is concerned, the pro-merger forces had sufficient votes to pass any resolution they wished to. The only issue in the litigation is whether or not their voting power was achieved by use of misleading or false proxy solicitation materials.

Mr. Weisner also commented upon the activities of banks who had furnished loans, discussed in the original Findings and Conclusions, which were undoubtedly necessary in order to assist the acquiring corporation in completing the merger. The conduct of the banks is not within the issues litigated.

Objections were also filed by Mr. Louis Horowitz. Mr. Horowitz, a practicing Certified Public Accountant since 1922, was initially a shareholder of Hess Oil. His papers filed in opposition were limited to that portion of the Stipulation of Settlement requesting an allowance in the amount therein stated to plaintiff's attorneys. The affidavit contains no expression of views as to how much the attorneys fees properly should amount to, but contents itself by characterizing the litigation as "completely unsuccessful and without any benefit to the stockholders," and says "I submit that any allowance to them, other than perhaps a nominal fee, would be simply a shocking giveaway of the corporation's assets." The affidavit also characterizes as "even more shocking" the defendants' agreement not to oppose the requested application for what Mr. Horowitz regards as a "staggering allowance."

It is axiomatic and undisputed that applications for legal fees are addressed to the discretion of the Court. Opposition to legal fees which limits itself to comments that the fees are "staggering," "shocking give-

away," or similar pejorative comments, is of no help in deciding this important issue. Mr. Horowitz referred to the Settlement Stipulation as "an Anthony Adverse book" an appellation probably not significant to many of today's younger practicing lawyers.

At the hearing, Mr. Horowitz also protested the fact that the surviving corporation was required to pay for the defense of various members of the board of directors of Amerada Hess and the Hess Foundation.

Whether the legal fees for the directors and the Hess Foundation should be paid by Amerada Hess is not a question directly before this Court. However, since the Hess defendants were exonerated from any liability for any wrongdoing in the case, and the liability of the Amerada directors was based only on negligence, indemnification from the corporation seems reasonable.

One Marvin S. Litt also filed a memorandum in opposition, but failed to appear at the hearing. At that time the Court struck Mr. Litt's objections because of his non-appearance. Mr. Litt's memorandum in opposition to the Stipulation of Settlement is limited to the amount of legal fees claimed by the class representative's counsel.

In considering the merits of this particular Settlement, the Court recognizes that the issue of liability has been resolved. This resolution has been favorable to plaintiff class only in part, and as heretofore noted, is subject to appellate review. There are great difficulties in connection with proof of damages, as is abundantly clear from the trial record here and the Court's prior Findings and Conclusions previously adverted to.

This Settlement has been negotiated by skilled attorneys dealing at arms-length and with full knowledge of the merits derived from having gone through a trial of this litigation. Plaintiff's counsel, who are experienced members of the bar, have analyzed the relevant factors bearing upon the underlying litigation. The entire record in the case has been such as to indicate to them, and to this Court, that the settlement as proposed is reasonable and prudent, and indeed favorable.

For the foregoing reasons, the Settlement and compromise proposed in the Stipulation filed herein and dated September 8, 1977 is hereby approved as fair, reasonable, adequate and Judgment shall enter accordingly. Legal fees and disbursements will be reserved pending appellate finality.

There is no just cause for delay. A final judgment shall enter herein pursuant to Rule 54(b), F.R.Civ.P., approving the Settlement, dismissing the complaint in this action and retaining jurisdiction of the parties and the settlement fund for the entry of a supplemental order or orders to (1) implement and effectuate the Settlement; (2) resolve any disputed claims; (3) fix the allowance of counsel fees, expenses and disbursements; and (4) make such other and further directions as may be necessary.

There is no necessity for further proceedings, or the filing of any further papers in *Del Noce v. Jomarco, Inc.,* 70 Civ. 4414, which action was previously dismissed "without prejudice" by order of this Court. Any claims sought to be raised therein are barred by the Judgment being filed in this action.

Submit a final judgment in accordance with this Memorandum Decision upon three (3) days notice of settlement, or written waiver of notice of settlement.